IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re OPENWAVE SYSTEMS, INC., SHAREHOLDER DERIVATIVE LITIGATION / | No. C 06-03468 SI<br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

On October 12, 2007, the Court heard oral argument on nominal defendant's motion to dismiss for failure to make a pre-suit litigation demand and named defendants' motion to dismiss for failure to state a claim. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court rules as follows.

## BACKGROUND[1]

Nominal defendant Openwave Systems, Inc. is an independent provider of open-standards software products and services for communications and media companies. Openwave is incorporated in Delaware and its principal place of business is in Redwood City, California. At the time plaintiffs filed this action, Openwave's Board of Directors consisted of six directors: Openwave's CEO, David Peterschmidt, and non-management directors Kenneth Denman, Bo Hedfors, Gerald Held, Masood Jabbar, and Bernard Puckett. The named defendants in this case include these six directors, along with 12 other current and former Openwave officers and directors.

---

[1] The following background facts are taken from the allegations of plaintiffs' Amended Consolidated Verified Shareholders Derivative Complaint ("Amended Complaint") that, for purposes of this motion, must be taken as true.

Named plaintiffs Henry Sherupski and Manfred Hacker are shareholders of Openwave. Plaintiffs allege that from 2000 to 2006, defendants engaged in a scheme whereby defendants granted and/or received backdated Openwave stock option grants. Defendants granted the backdated stock options under the company's "Stock Option Plans" which required the Board of Directors, or a designated Committee, to determine the exercise price of each option grant within certain limitations. One of the limitations was that stock option grants could not have an exercise price less than the fair market value of a share of Openwave common stock on the date of grant. The 1995 and 1996 Stock Option Plans were administered by the Board's Compensation Committee. At various points between 2000 and 2005 defendants Denman, Puckett, Hedfors, and Verhalen served on the Compensation Committee. The 1999 Stock Option Plan was administered by the entire Board.

Plaintiffs allege that, despite the exercise price requirements of the Stock Option Plans, defendants granted backdated stock options with "strike prices" below the fair market price on the date granted. Defendants attempted to hide this backdating scheme from shareholders and the public by issuing materially false and misleading financial results and Proxy Statements.

On October 4, 2006, Openwave announced that an internal investigation had discovered irregularities in stock option grants between 2005 and 2006, which would require a restatement of financial results. On December 1, 2006, Openwave announced that it had identified "certain circumstances in which the grant date used by the Company as the 'measurement date' for accounting purposes preceded the appropriate measurement date." Amended Complaint ¶ 2. Along with this announcement, Openwave issued restated financial results, taking a $182 million charge for stock-based compensation.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

2

1 evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

Once again, nominal-defendant Openwave moves the Court to dismiss this action for plaintiffs' failure to make a pre-suit litigation demand. Defendants contend that plaintiffs' Amended Complaint has failed to rectify the problems the Court addressed in its May 17, 2007 Order Granting Defendants' Motion to Dismiss [Docket # 95]. Plaintiffs respond that the Amended Complaint sufficiently pleads demand futility under Delaware law. The Court incorporates the legal background set forth on pages 3-6 of the May 17, 2007 Order.

The facts alleged in plaintiffs' Amended Complaint in this case are somewhat analogous to the facts of *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007). Plaintiffs here allege that at the time they filed this action, Openwave's Board of Directors consisted of six directors: Peterschmidt, Denman, Hedfors, Held, Jabbar, and Puckett. Plaintiffs also allege that three of the directors, Puckett, Hedfors and Denman, were members of the Compensation Committee during the period when the Compensation Committee granted backdated stock options. *See* Amended Complaint ¶¶ 18, 20, 21, 143, 144. As in

*Ryan*, then, "one half of the current board members approved" at least some of the "challenged transaction[s]." *Ryan*, 918 A.2d at 353. Therefore, the Court agrees with plaintiffs that this "approval may be imputed to the entire board for purposes of proving demand futility, [and] the *Aronson* test applies." *Id.*

In addition to the alleged interested members of the Compensation Committee, plaintiffs allege that Peterschmidt personally received backdated stock options on October 13, 2005, *id.* ¶ 145, that Peterschmidt and Puckett engaged in insider trading by selling shares of Openwave stock with the knowledge of the backdating scheme, *id.* ¶¶ 146-47, and that all directors knowingly included false statements relating to the backdating scheme in Forms 10-K fiscal reports, proxy statements, and stock option plans, *id.* ¶¶ 148-55. All of plaintiffs' alleged grounds for the lack of disinterestedness of the Board of Directors rest on the actual occurrence of backdating at Openwave, and thus depend on plaintiffs' ability to allege with sufficient particularity the possibility that backdating occurred. As in *Ryan*, plaintiffs here argue that their backdating claims are sufficiently supported by two types of allegations: (1) allegations of specific, fortuitously-timed option grants; and (2) the Merrill Lynch "analysis measur[ing] the extent to which stock price performance subsequent to options pricing events diverged from stock price performance over a longer period of time." *Ryan*, 918 A.2d at 354. Paragraphs 54, 58-60, 72, 84, 92, and 94 of the Amended Complaint allege in great detail how six stock option grants made by or to defendants between 2001 and 2005 "enjoyed abnormally high return[s]." Amended Complaint ¶ 94. Paragraphs 54 through 94 also provide calculations of the 20-day cumulative returns for all 39 days on which Openwave reported option grants during the time in question. The Court will address each type of allegation in turn.[2]

---

[2] Plaintiffs also argue that a recent decision by the Southern District of New York in a class action brought against *Openwave* mandates that this Court find demand futility. *In re Openwave Secs. Lit.*, 07 Civ. 1309 (S.D. N.Y. October 31, 2007). The court ruled that some of the plaintiffs' Exchange Act claims could survive a motion to dismiss because the complaint adequately pled scienter by members of the compensation committee. That ruling, of course, does not mean that defendants actually were interested, only that the class action complaint could survive a 12(b)(6) motion.

4

**1.      Specific option grants**

The Court previously held that plaintiffs' initial complaint did not "allege facts sufficient to support an inference of backdating" because a showing that 10 out of approximately 40 stock option grant dates fell on relatively low trading day prices "is as consistent with a random selection of stock option grant dates, as with a pattern of backdating." May 17, 2007 Order at 10. The Court agrees with defendants that plaintiffs' Amended Complaint presents the same problem.

Plaintiffs focus the Court's attention on "several grants that appear to be backdated, i.e. January 8, 2001, January 10, 2001, January 11, 2001, October 10, 2002, October 4, 2004, and October 13, 2005." Opposition at 8:15-17. These six grants are analyzed in Paragraph 94 of the Amended Complaint.[3] These six grants dates do not permit the Court to draw any statistically significant conclusions. Of the six dates plaintiffs point to, one fell at a monthly low (January 8, 2001), one fell at a quarterly low (October 10, 2002), one fell at the second lowest date of the quarter (October 4, 2004), two fell at the fifth lowest dates of the month (January 10, 2001, and October 13, 2005), and one fell at the seventh lowest date of the month (January 11, 2001). *See* Amended Complaint ¶¶ 58-60, 72, 84, 92. That three grants out of 39 fell on the fifth and seventh lowest price dates of their respective months is of little significance. It is also consistent with a random selection of grant dates for one date out of 39 to fall at a monthly low; as discussed in the Court's prior order: "when looking at a set of approximately 40 randomly-granted stock options, one would expect approximately two to fall on the lowest price of any given month." Order at 10.

One would also expect approximately .60 of the stock options to fall on the lowest price of any given quarter (based on an average of 21.67 trading days per month and 65.01 trading days per quarter).

---

[3] Plaintiffs have clarified that the chart at Paragraph 94 contains two grant dates – July 20, 2001, and August 23, 2001 – that were improperly included because they resulted in negative management returns and thus could not have been backdated. The chart also includes the grant date of August 13, 2004, which is not mentioned in plaintiffs' Opposition or in the text of Paragraph 94. For that reason, the Court does not count this grant date among those plaintiffs point to as suspicious; in addition, the numbers in the chart for this date in Paragraph 94 do not reflect the numbers for the same date in Paragraph 82, and Paragraph 82 fails to allege that August 13, 2004, was among the lowest price dates of that month or quarter.

5

*See id.* Although the grants that fell on the lowest and second lowest dates of their respective quarters give the Court some pause, these two dates alone, in the context of the remaining 39 grant dates, are not enough to sustain plaintiffs' burden. *See In re CNET Networks, Inc. S'holder Derivative Litig.*, 483 F. Supp. 2d 947, 958 (N.D. Cal. 2007) (discussing the importance of context to show a pattern of backdating); *In re Linear Tech. Corp. Derivative Litig.*, 2006 WL 3533024 *3 (N.D. Cal. Dec. 7, 2006) (same). More significantly, for these two dates – October 10, 2002, and October 4, 2004 – Openwave was required by the Sarbanes-Oxley Act of 2002 to disclose the stock option grant within two business days. *See CNET Networks*, 483 F. Supp. 2d at 961 (explaining two-day filing requirement). Indeed, Plaintiffs' Amended Complaint acknowledges that Openwave filed Forms 4 with the Securities and Exchange Commission ("SEC") for its stock option grants on both dates. *See* Amended Complaint ¶¶ 72, 84.[4] The Form 4 for the October 10, 2002 grants was filed on October 11, 2002, while the Forms 4 for the October 4, 2004 grants were filed on October 6, 2004. *Id.* Thus, if these grants were backdated, they could have been backdated only by one day and two days, respectively, because plaintiffs do not allege that the Forms 4 themselves were backdated. Although "[b]ackdating stock options by two days is still backdating," Order at 10, the Court is not convinced that a one- or two-day window could give defendants enough perspective on the market to intentionally choose the lowest closing prices of the quarter. *See CNET Networks*, 483 F. Supp. 2d at 961 ("It is highly unlikely that defendants could have gone back in time to change the date for this grant if it was on record with the SEC two days after the fact. Defendants would not have had time to see what the stock did in the next few days in order to find the most advantageous grant date. This does cast doubt on plaintiffs' allegations.").

It is also important to note the difference between the specific dates put forth by plaintiffs and

---

[4] The Court grants defendants' request for judicial notice of the Forms 4 filed by Openwave, as well as other filings with the SEC and the Merrill Lynch Report. *See* May 17, 2007 Order at 9; *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987) ("[F]acts subject to judicial notice may be considered on a motion to dismiss."); *In re Calpine Corp.*, 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003) ("In a securities action, a court may take judicial notice of public filings when adjudicating a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.").

6

the dates in *Ryan*. Plaintiffs point to six dates, out of a total of 39 reporting dates, which occurred during the lowest, second lowest, fifth lowest, and seventh lowest closing prices of the various months or quarters. This stands in sharp contrast to *Ryan*, where it was alleged that "*every* challenged option grant occurred during *the lowest* market price of the month or year in which it was granted." *Ryan*, 918 A.2d at 354 (emphasis added). For these reasons, the specific dates pointed to in plaintiffs' Amended Complaint and Opposition do not suggest backdating.

### 2. Merrill Lynch 20-day trading analysis

In its prior order, the Court held that plaintiffs' 20-day trading analysis did not meet the standard laid out in *Ryan* because it failed to compare the 20-day cumulative returns to any benchmarks and failed to examine the 20-day return on *all* reported stock option grants, as the analysis in *Ryan* apparently did. Order at 11 (plaintiffs did "not compare the average 20 day return on *all* reported stock option grants during the relevant period to an average 20 day return on Openwave stock during the period. Instead, plaintiffs simply compare the 20 day return on the 21 particular, handpicked option grants to the average Openwave stock performance."). Although plaintiffs have now included a more detailed 20-day trading analysis, one that includes all 39 reported stock option grants, plaintiffs have again failed to put forth sufficiently particularized data for purposes of showing the presence of backdating and demand futility.

The Merrill Lynch report on which plaintiffs modeled their 20-day trading analysis looked at a 20-day period for a specific reason: 20 days was the window for reporting stock option grants prior to the Sarbanes-Oxley Act of 2002. Merrill Lynch Report at 2, Request for Judicial Notice ("RJN") at ex. 73 (looking at whether companies have "taken advantage of their ability to backdate options within the 20-day windows that the law provided prior to the implementation of Sarbanes Oxley in 2002"). In fact, that report covered only the period from 1997 to 2002, as "the implementation of Sarbanes Oxley reporting requirements following 2002 renders the analysis less valuable." *Id.* Here, however, plaintiffs allege that backdating occurred between 2000 and 2006, Amended Complaint ¶ 17, such that

7

much of this period was covered by the more stringent Sarbanes-Oxley reporting requirements, which required "all directors and officers transacting in their company's stock . . . to file a Form 4 by the close of business on the second day following the transaction. 15 U.S.C. 78p(a)(2)(C)," *CNET Networks*, 483 F. Supp. 2d at 961. In fact, the Forms 4 filed by Openwave with the SEC demonstrate that Openwave reported the granting of stock options within roughly two days for at least 21 out of the 39 grant dates discussed in plaintiffs' Amended Complaint. *See* RJN at exs. 24-66. This means that for almost every stock option grant from October 1, 2002, through January 12, 2006, the 20-day trading analysis is at best irrelevant and at worst misleading, in the absence of allegations that the Forms 4 were fraudulently filed. Yet plaintiffs' Amended Complaint continues to use the 20-day trading analysis – rather than a two-day analysis – for every single stock option grant covered by a Form 4. *See* Amended Complaint ¶¶ 71-72, 74-81, 83-93. Because the Forms 4 were filed with the SEC within roughly two days of at least 21 grant dates, the 20-day analysis presented in plaintiffs' Amended Complaint is simply meaningless for these 21 dates. *See In re F5 Networks, Inc., Derivative Litig.*, 2007 WL 2476278 *14 n.12 (W.D. Wash. Aug. 6, 2007) ("[T]he fact that the options granted on eight of the twelve dates were reported to the SEC *before 20 closing days passed*, renders the 20-day cumulative return analysis meaningless for these grants.").

For example, with respect to the October 1, 2002 grant, the stock price had actually dropped two days later when the grant was disclosed in a Form 4. *See* Amended Complaint ¶ 71; RJN at ex. 24. Plaintiffs, however, have calculated this in their complaint as a 20-day return of 69.4%, annualized at 1248.4%, for a total advantage over regular investors of 1308.9%. Amended Complaint ¶ 71. A second example is the November 2, 2004 grant, which plaintiffs represent as an annualized 20-day return for management of 175.6% and a 139.4% advantage over regular investors, *id.* ¶ 85, despite the fact that Openwave recorded the grant on a Form 4 two days later, *see* RJN at ex. 47. During those two days, the stock price actually dropped. Amended Complaint ¶ 85.

Plaintiffs' reliance on the 20-day analysis despite the existence of Forms 4 for at least 21 of the grants in question also raises problems with other aspects of plaintiffs' amended complaint. For

instance, plaintiffs contend that some defendants exercised their stock options to sell $54.8 million worth of Openwave stock. *Id.* ¶ 125. It appears this $54.8 million figure is based on the value of the alleged backdated stock options after 20 days, yet many of the stock options at issue would appear to have been covered by the two-day reporting requirement of Sarbanes Oxley, again making the use of a 20-day period meaningless.

The Court also cannot accept plaintiffs' overall conclusions drawn from its 20-day return analysis. Plaintiffs allege that Openwave directors and management enjoyed an average annualized return of 1001% on their stock options, whereas shareholders received an average annual return of -19%. Amended Complain ¶ 94. Apparently based on these numbers, plaintiffs contend that "the disparities between management and investor returns in this case are greater than the disparities in the management and shareholder returns in the *Ryan* litigation – which also illustrates that the Openwave grants were backdated." *Id.* ¶ 95. There are a number of problems with plaintiffs' reliance on the chart at Paragraph 94 to make their case that the Merrill Lynch-style analysis demonstrates backdating at Openwave. First, despite this Court's admonition that plaintiffs must "compare the average 20 day return on *all* reported stock option grants during the relevant period to the average 20 day return on Openwave stock during the period," Order at 11, plaintiffs have yet again failed to present an average 20-day return on all reported grants, choosing instead to include in the average only nine grants. *See* Amended Complaint ¶ 94. The Court has already stated that this type of limited analysis cannot support a reasonable inference of backdating. Order at 11. Had plaintiffs chosen to present an average of returns on *all* reported grants, that data would have included grants where Openwave management actually lost money or fared worse than the market. *See*, *e.g.*, Amended Complaint ¶¶ 56, 62-64, 67-70, 73, 75-77, 79-80, 86, 88, 90.

Second, plaintiffs' overall average return in Paragraph 94 includes two dates (July 20, 2001, and August 23, 2001) where Openwave management actually lost money in the 20-day period following the stock option date. Moreover, the figures for these dates do not match the data provided elsewhere in the Amended Complaint. *Compare* Amended Complaint ¶ 94 *with* ¶ 62-63.

9

Finally, the stock option grants for three of the dates featured in Paragraph 94 were disclosed to the SEC on Forms 4 within a few days after the grant. The grant on October 10, 2002, was reported to the SEC within one day, *id.* ¶ 72; the grant on October 4, 2004, was reported within two days, *id.* ¶ 84; and the grant on October 13, 2005 was reported within four days, *id.* ¶ 92. As discussed above, because these three grants were reported to the SEC within a few days, plaintiffs' 20-day analysis is of no relevance absent an indication that the SEC filings were backdated. For an average return to be of some use, it would have to account for pre- and post-Sarbanes-Oxley reporting, such as by using a shorter time period analysis for stock options reported on Forms 4. Because plaintiffs have not done so, their purported average return for Openwave management, which is based only on a 20-day analysis but which includes grants disclosed to the SEC within a day or two, is meaningless and a great deal less informative than that presented by the plaintiffs in *Ryan*.

### 3.     Results of Openwave's internal investigation

Finally, plaintiffs have brought to the Court's attention a recent decision by the Delaware Court of Chancery, *Conrad v. Blank*, No. 2611-VCL (Del. Ch. Sept. 7, 2007) ("*Staples*"), which plaintiffs contend stands for the proposition that demand futility may be found where directors have investigated option granting practices, have found incorrect measurement dates indicating backdating, and yet have done nothing to remedy the discovered errors. Indeed, the Delaware court noted that given "these circumstances, it would be odd if Delaware law required a stockholder to make demand on the board of directors before suing on those very same theories of recovery." *Id.* at slip op. 17.

The Court is certainly mindful that Openwave did conduct an investigation similar to the one at issue in *Staples*, finding additional charges of $182 million for fiscal years 2000 through 2005 – not an insubstantial sum. It also appears that defendants took no disciplinary action at the conclusion of the study. The Court does not agree with plaintiffs, however, that these findings alone render the directors interested. The results of the investigation certainly point to the possibility of backdating, but do not alone prove demand futility. In *Staples*, for instance, the court relied on many other factors in addition

10

to the internal investigation, such as the allegation that the compensation committee there had "at all times pertinent to this litigation . . . the full and exclusive authority to oversee and approve option grants," *id.* at slip op. 18, and that neither party contended that the compensation committee had delegated any authority to oversee stock option grants to officers of the corporation, *id.* at slip op. 6. Here, by contrast, at least two of the stock option plans under which the stock options were granted – the 1995 and 1996 Stock Plans, as amended in 2001 – permitted the compensation committee to delegate authority over option grants to management, and plaintiffs do not contend that this delegation did not occur. *See* RJN at ex. 68 § 4(a); ex. 69 § 4(a). Indeed, the Form 10-K for the fiscal year that ended June 30, 2006, which discusses Openwave's internal investigation of stock options, indicates that the compensation committee did delegate authority to the "Stock Option Committee ('SOC'), a one-person committee . . . consisting of the Company's CEO." RJN ex. 7 at 5. This delegation makes this case more akin to *Desimone v. Barrows*, 924 A.2d 908, 942 (Del. Ch. 2007), and *In re CNET Networks*, 483 F. Supp. 2d at 965, where it was unclear whether the compensation committee members were involved in the mechanics of granting stock options, *see also Staples*, slip op. 19.

In addition, the *Staples* court also relied on the fact that the complaint there identified 12 option grants out of 51 that appeared to be backdated, eight of which were made at the lowest trading price for the month (two of these at the lowest price for the quarter), and 11 of which were made prior to the implementation of the Sarbanes Oxley two-day disclosure rule. *Id.* at slip op. 2, 20. This is a considerably stronger showing of a likelihood of backdating than what has been alleged here, where plaintiffs point to only six option grants out of 39, three of which were made after the implementation of the Sarbanes Oxley Act and only three of which were made at monthly or quarterly lows. In light of these additional factors, the Court finds the *Staples* analysis to be of little help to plaintiffs.

Plaintiffs' Amended Complaint fails to meet Rule 23.1's requirements. Plaintiffs' allegations and statistical analyses are simply insufficient to allow a reasonable inference of backdating, and the Court need not reach defendants' other contentions at this time. Leave to amend will be granted in order to allow plaintiffs the opportunity to conduct and present a more comprehensive statistical analysis, or

11

other allegations supporting an inference of backdating, should they wish to do so.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS nominal defendant's motion to dismiss for failure to comply with Rule 23.1, with leave to amend [Docket # 100]. Named defendants' motion to dismiss is likewise GRANTED on this one basis only [Docket # 101]. The Court also GRANTS defendants' unopposed request for judicial notice [Docket # 103]. Plaintiffs must file an amended complaint on or before February 29, 2008, should they wish to do so.

**IT IS SO ORDERED.**

Dated: February 12, 2008

SUSAN ILLSTON
United States District Judge

12